RECEIVED-CLERK
U.S. DISTRICT COURT

2005 JUL 15 P 3:43

Patrick L. Rocco (PR 8621)
**SHALOV STONE & BONNER LLP**
163 Madison Avenue, P.O. Box 1277
Morristown, New Jersey 07962-1277
(973) 775-8997

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————————x
                                         :

CENTRAL LABORERS' PENSION FUND, :
Individually and On Behalf of All Others Similarly :    Case No. **05 CV 3557 (FSH)**
Situated,                              :
                                         :    CLASS ACTION COMPLAINT FOR
                Plaintiff,              :    VIOLATIONS OF FEDERAL
                                           :    SECURITIES LAWS
         vs.                                :
                                           :
MAJESCO ENTERTAINMENT COMPANY, :
CARL YANKOWSKI, JAN E. CHASON and :    **JURY TRIAL DEMANDED**
JESSE SUTTON,                           :
                                           :
                Defendants.           :
                                           :
———————————————————————x

        Plaintiff alleges the following based upon the investigation of plaintiff's counsel, which

included a review of regulatory filings and reports, securities analyst reports and advisories about

Majesco Entertainment Company ("Majesco" or the "Company"), press releases and other public

statements issued by the Company, and media reports about the Company. Plaintiff believes that

substantial additional evidentiary support will exist for the allegations set forth herein after a

reasonable opportunity for discovery.

## NATURE OF THE ACTION AND SUMMARY OF ALLEGATIONS

1.      This is a federal class action on behalf of purchasers of the securities of Majesco between December 8, 2004 to July 12, 2005, inclusive (the "Class Period") who were damaged thereby, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Majesco is an Edison, New Jersey-based designer and seller of digital entertainment products, such as video games, video content and related accessories.

3.      The Company reported exceptionally strong results for its 2004 fiscal year, with revenues rising almost threefold from 2003 levels and gross profits more than doubling. During the Class Period, defendants represented that the Company's revenue and income would continue to grow dramatically in its fiscal year 2005, even as the Company increased its investment in product development and marketing. According to defendants, the Company expected $175-$185 million in net revenues and operating income of $16-$18 million in 2005, representing strong growth over Majesco's 2004 results.

4.      Unbeknownst to investors, however, Majesco's strong reported growth resulted, in material part, from the Company having inundated its retailers with product that defendants knew was in excess of end-user demand. Defendants representations regarding the Company's expected 2005 revenues and earnings lacked any basis and deceived investors about the true state of Majesco's business and prospects. As defendants knew or recklessly disregarded, the Company's strong growth was unsustainable because retailers would either return a material quantity of unsold products or would meet 2005 demand by selling off excess inventory instead of ordering new products.  In addition, unbeknownst to investors, but known to or recklessly

- 2 -

disregarded by defendants, two of the Company's new video game titles flopped, and the Company could not meet its earnings expectations without the success of these new titles.

5.      Defendants were motivated to engage in the wrongdoing alleged herein so that Majesco's planned secondary offering, which allowed many large stockholders, mostly institutions, to sell their personally held Majesco shares, would be priced higher than it would have been had investors known the truth about the Company's business (*i.e.*, that the seemingly impressive 2004, and first half of 2005, results were not sustainable, and did not reflect present demand, or foreseeable future demand, for the Company's products or its future earnings potential).

6.      On July 12, 2005, after the close of regular trading, Majesco issued a press release announcing a dramatic reduction in its expected 2005 results. Rather than earning $16-$18 million in 2005, defendants announced that the Company would swing to a *loss* of $16-$19 million on revenues of $120 to $125 million. The Company attributed this astounding reversal to: substantially weaker demand for all of the Company's products; a glut of Majesco products sitting on retailers' shelves or in their stockrooms; and weak reorders. Later that same day, Majesco announced that defendant Yankowski had resigned his positions as Majesco's Chairman and Chief Executive Officer.

7.      In response to this announcement, the price of Majesco common stock plummeted, falling by 48% in one day, from $6.89 per share on July 12, 2005 to $3.56 per share on July 13, 2005, earning it the dubious distinction of being the largest percentage loser on the Nasdaq for the day. This drop was achieved on extremely high trading volume of over 19 million

- 3 -

shares. During the previous three months, the Company's shares traded an average of 270,014 shares per day.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j (b) and 78t (a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act.

10.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b).   Many of the acts charged herein occurred in substantial part in this District and Majesco conducts business in this District. In addition, during the Class Period, Majesco was headquartered in this District, in Edison, New Jersey.

11.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff, Central Laborers' Pension Fund, as set forth in the accompanying certification, incorporated by reference herein, purchased Majesco common stock at artificially inflated prices during the Class Period and has suffered economic harm as a result of defendants' wrongdoing.

- 4 -

13.     Defendant Majesco is a Delaware corporation headquartered at 160 Raritan
Center Parkway, Edison, New Jersey 08837. Majesco was formerly known as Majesco Holdings
Inc. and is referred to as such in certain press releases reproduced in this complaint.

14.     Defendant Carl Yankowski served as Majesco's Chairman of the Board and Chief
Executive Officer throughout the Class Period.

15.     Defendant Jan E. Chason served as Majesco's Chief Financial Officer throughout
the Class Period.

16.     Defendant Jesse Sutton served as Majesco's President throughout the Class
Period.

17.     Defendants Yankowski, Chason and Sutton are referred to herein as the
"Individual Defendants."

18.     During the Class Period, the Individual Defendants, as senior executive officers
and/or directors of Majesco, were privy to confidential and proprietary information concerning
Majesco, its operations, finances, financial condition, present and future business prospects. The
Individual Defendants also had access to material adverse non-public information concerning
Majesco, as discussed in detail below. Because of their positions with Majesco, the Individual
Defendants had access to non-public information about its business, finances, products, markets
and present and future business prospects *via* access to internal corporate documents,
conversations and connections with other corporate officers and employees, attendance at
management and board of directors meetings and committees thereof and *via* reports and other
information provided to them in connection therewith. Because of their possession of such

- 5 -

information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

19.     The Individual Defendants are liable as direct participants in, and as co-conspirators, with respect to the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of Section 20 of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Majesco's business.

20.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

21.     As senior executive officers and/or directors and as controlling persons of a publicly-traded company whose securities were, and are, registered with the Securities and Exchange Commission ("SEC") pursuant to the Exchange Act, and was traded on the Nasdaq National Market ("Nasdaq") and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to Majesco's financial condition and performance, growth, operations, financial statements,

business, products, markets, management, earnings and present and future business prospects, to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Majesco's securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

22.    The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Majesco securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme (i) deceived the investing public regarding Majesco's business, operations and management and the intrinsic value of Majesco securities and (ii) caused plaintiff and members of the Class to purchase Majesco securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all those who purchased the securities of Majesco between December 8, 2004 to July 12, 2005, inclusive, who were damaged thereby. Excluded from the Class are defendants, the officers and/or directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

24.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Majesco had more than 22.2 million shares outstanding that were actively traded on the Nasdaq. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery,

- 7 -

plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Majesco or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

25.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

26.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

27.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

> (a)     whether the federal securities laws were violated by defendants' acts as alleged herein;
>
> (b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Majesco; and
>
> (c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

- 8 -

redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

## Materially False and Misleading Statements Issued During the Class Period

29.     The Class Period begins on December 8, 2005, with Majesco's release of 2004

results and guidance for 2005. For 2004, Majesco reported that net revenues almost tripled from

2003, while gross profit more than doubled, stating as follows in relevant part:

> For the year ended October 31, 2004, the Company reported net revenues of $121 million, as compared to $46.6 million in fiscal 2003. Gross profit increased to $34.7 million, or 28.7% of net revenues versus $15.8 million, or 33.9% of net revenues during 2003. For the 2004 period, operating income was $12.1 million versus an operating loss of $8.7 million in the comparable 2003 time period. Net loss for the year was $11.2 million, or $.26 per share based on 58,699,602 weighted average shares outstanding, compared to a net loss of $10.8 million, or $.71 per share based on 15,325,000 weighted average shares outstanding last year.

30.     Commenting on the favorable results, defendant Yankowski stressed that the

Company not only had an outstanding year, but that it was well positioned for significant growth

in 2005:

> For its fiscal year 2005, the Company expects $175-$185 million in net revenues and operating income of $16-$18 million. This guidance anticipates increases in net revenue for all business units and anticipated improvement in the profitability from video games, while including consideration for planned increased investment in both product development and marketing.
>
> Mr. Yankowski continued, "We believe we have positioned Majesco for significant growth in 2005. Our current success and future strategy is based upon offering a diverse range of products and content for digital entertainment platforms. To that end, we have structured our organization around strategic business units that will focus on our three main product lines: video games, including premium priced frontline titles and lower-priced value titles; video content, currently comprised of 18 GBA Video titles; and digital media peripherals and applications, which include wireless and other accessories for the Game Boy Advance and our line of TV Arcade products. The new additions to

-9-

our management team and board of directors bring extensive experience in building brand awareness and market share in both the retail and entertainment industries. With the additional working capital we expect to receive from our proposed secondary offering, we intend to invest in product research and development, move to a more internally driven marketing model, and aggressively grow each of our core businesses. Our longer term plans will likely include growth both organically and via affiliations."

In the press release, defendants reminded investors of Majesco's upcoming secondary offering.

31.   On January 26, 2005, Majesco launched a secondary offering of 6 million shares of common stock at $12.50 per share. Of the shares sold, 3,682,176 were offered by the Company and 2,317,824 were offered by selling stockholders. The selling stockholders received their stock in private placements. In an offering registration statement and prospectus filed with the SEC and signed by the Individual Defendants, defendants reiterated the Company's highly favorable expectations for 2005, representing as follows:

> For fiscal 2005 we expect to report $175 to $185 million in net revenues with operating income of $16 to $18 million. This guidance anticipates increases in net revenues from all of our product groupings and anticipates improvement in the profitability from video games, while taking into consideration planned increases in product development and marketing efforts for all of our products. In the opinion of management, this guidance does not give recognition to the impacts of certain strategic opportunities that we are considering such as the proceeds from this offering.

32.   On March 9, 2005, Majesco issued a press release announcing "record net revenues" for the first fiscal quarter of 2005 and reiterated its guidance for 2005:

> The Company reported record first quarter net revenues of $30.7 million, compared to $24.6 million reported for the same period in 2004. Gross profit increased to $11.0 million or 35.7 percent of net revenues for the first quarter, compared to $7.5 million, or 30.4 percent of net revenues for the same period in 2004. Operating income was $2.0 million for the 2005 quarter versus operating income of $2.3 million for the same period one year ago.
>
> For the quarter, the Company generated net income of $700,000 compared to net income of $1.1 million for the first quarter of last year. As a result of a one-time

charge of $1.1 million related to an incentive granted to certain holders for the exercise of warrants, the Company reported a net loss applicable to common stockholders of ($.02) per share compared to net income applicable to common stockholders of $.25 per share for the same period of last year. Excluding this one-time charge, the Company would have reported net income per share of $.05 for the first quarter of 2005.

Announcing anticipated increases in revenue across all product lines, defendants reiterated the previously disseminated 2005 guidance:

Management reiterated its expectations for fiscal 2005, expecting revenue of $175 - $185 million and operating income of $16 - $18 million. This guidance anticipates increases in net revenue for all product lines and improvement in the profitability from video games, while including consideration for planned increased investment in marketing as well as increased infrastructure to support the Company's anticipated growth and to meet the requirements of being a NASDAQ traded company.

33.     The statements referenced above in ¶¶29-32 were each materially false and misleading when made because they failed to disclose and misrepresented the following material adverse facts, among others:

(a)     Majesco's impressive reported revenue growth in 2004, and first half of 2005, was achieved, in material part, by shipping products in quantities that greatly exceeded end-user demand;

(b)     demand for the Company's products in 2005 would be met from retailers' excess inventory of Majesco products, rather than new orders;

(c)     demand for two of the Company's new video game titles (*Advent Rising* and *Psychonauts*) was poor;

(d)     the 2004, and first half 2005, results were unsustainable, such that the Company could not realistically maintain, much less grow, revenues and earnings in 2005, contrary to defendants' representations that the growth would continue; and

(e)     the Company's favorable 2005 guidance lacked any reasonable basis, in light of the above facts, which were known to, or recklessly disregarded by, defendants.

34.    On June 7, 2005, Majesco reported "record" revenues for its fiscal second quarter

of 2005, and reiterated its guidance for 2005:

> The Company reported record second quarter net revenues of $19.9 million, compared to $17.0 million for the same period in 2004. Gross profit increased to $8.4 million, or 42.4% of net revenues for the second quarter, compared to $5.4 million, or 31.9% of net revenues for the same period in 2004. Operating income was $821,000 for the 2005 quarter, versus $1.1 million for the same period one year ago. The decrease in operating income is attributable to infrastructure to support the Company's growth, as well as fulfilling obligations as a NASDAQ-listed company.

> For the quarter, the Company generated net income of $189,000 compared to a net loss of $49.0 million for the second quarter of last year. The 2004 net loss was principally the result of a non-cash charge related to the issuance of warrants in connection with the Company's private placement in February 2004 (see tables for further explanation). Excluding the non-cash charge the Company would have generated net income of $208,000 for the 2004 period. Net income applicable to common stockholders for the 2005 quarter was $0.01 per share compared to a net loss applicable to common stockholders of ($8.35) per share for the same period last year.

***

> Management reiterated its expectations for fiscal 2005 of net revenues of $175 - $185 million and operating income of approximately $16 to $18 million. This guidance includes consideration for planned increased investment in marketing as well as increased infrastructure to support the Company's anticipated growth and to meet the requirements of being a NASDAQ traded company and to comply with Sarbanes-Oxley requirements.

Defendant Yankowski commented on the record results, expressing "confidence" in the

Company's ability to meet its 2005 guidance:

> Carl Yankowski, Majesco's Chairman and Chief Executive Officer, commented, "During the second quarter we announced several new premium game titles aimed at expanding our market share, as well as positioning Majesco to benefit from the upcoming hardware transition. We are proud of the reception our diverse new products received at E3. We are entering the important second half of our fiscal year with confidence that we are well positioned to achieve our objectives for full year 2005. We remain focused on global growth, both organic and otherwise."

35.     The statements referenced above in ¶34 were each materially false and misleading

when made because they failed to disclose and misrepresented the following material adverse

facts, among others:

        (a)     Majesco's impressive reported revenue growth in 2004, and first
half of 2005, was achieved, in material part, by shipping products in quantities
that greatly exceeded end-user demand;

        (b)     demand for the Company's products in 2005 would be met from
retailers' excess inventory of Majesco products, rather than new orders;

        (c)     demand for two of the Company's new video game titles (*Advent
Rising* and *Psychonauts*) was poor;

        (d)     the 2004, and first half 2005, results were unsustainable, such that
the Company could not realistically maintain, much less grow, revenues and
earnings in 2005, contrary to defendants' representations of that the growth would
continue; and

        (e)     the Company's favorable 2005 guidance lacked any reasonable
basis, in light of the above facts, which were known to, or recklessly disregarded
by, defendants.

## THE TRUTH BEGINS TO EMERGE

36.     On July 12, 2005, only weeks after defendants confidently reiterated Majesco's

2005 guidance, Majesco issued a press release announcing a dramatic reduction in its expected

2005 results. Rather than earning $16-$18 million in 2005, defendants now announced that the

Company would swing to a *loss* of $16-$19 million on revenues of $120 to $125 million. The

Company attributed this astounding reversal to: substantially weaker demand for all of the

Company's products; a glut of Majesco products sitting on retailers' shelves or in their

stockrooms; and weak reorders.  Later that same day, Majesco announced that defendant

Yankowski resigned his positions as Majesco's Chairman and Chief Executive Officer.  In

relevant part the Company stated as follows:

- 13 -

The Company's previously stated expectations were for net revenues of $175 to $185 million and operating income of $16 to $18 million with at least 50 percent of the net revenues occurring in the fourth fiscal quarter. The Company now anticipates net revenues for fiscal 2005 to be between $120 million and $125 million and an operating loss of $16 million to $19 million. Included in the expected operating loss are: write-downs of receivables as a result of a recent bankruptcy of one of the Company's customers; provisions for impairments of capitalized costs and severance costs; as well as increased allowances for price protection which will be recorded as a reduction of revenues. The Company anticipates that these items will total approximately $12 million and be included in the fiscal third quarter.

As a result of the factors described above, the Company expects net revenues for the current quarter ending July 31, 2005 to be in the range of $5 million to $10 million, net of the aforementioned increased provision for allowances for price protection, and an operating loss between $19 million to $22 million.

The lower expectations are attributable to the following factors:

Substantially weaker than expected sales across all of the Company's product lines

The movement of one of its key movie-based video game titles out of the fiscal year in order to better coincide with the related theatrical release

Recent feedback concerning inventory levels indicates lower than expected initial orders for many of the Company's products, and soft reorders for the remainder of the year

An exceptionally slow summer season exacerbated by an earlier than expected impact of the upcoming video game platform transition

"We are disappointed in our anticipated results for the year. Our weaker than expected sales and recent discussions with industry partners have led us to conclude that it is prudent to adjust our guidance." said Jesse Sutton, President. "Despite the difficult retail environment we are experiencing, we plan to exploit the growing market for video game products and remain focused on producing high-quality games and other digital entertainment products."

37.     In response to this announcement, the price of Majesco common stock

plummeted, falling by 48% in one day, from $6.89 per share on July 12, 2005 to $3.56 per share

on July 13, 2005, earning it the dubious distinction of being the largest percentage loser on the

Nasdaq for the day. This astounding drop occurred on extremely high trading volume of over 19

million shares. During the previous three months, the Company's shares traded an average of
270,014 shares per day.

### Applicability Of Presumption Of Reliance:
### Fraud-On-The-Market Doctrine

38. At all relevant times, the market for Majesco's securities was an efficient market
for the following reasons, among others:

> (a) Majesco's stock met the requirements for listing, and were listed
> and actively traded on the Nasdaq, a highly efficient and automated market;

> (b) As a regulated issuer, Majesco filed periodic public reports with
> the SEC and the Nasdaq;

> (c) Majesco regularly communicated with public investors *via*
> established market communication mechanisms, including through regular
> disseminations of press releases on the national circuits of major newswire
> services and through other wide-ranging public disclosures, such as
> communications with the financial press and other similar reporting services; and

> (d) Majesco was followed by several securities analysts employed by
> major brokerage firms who wrote reports, which were distributed to the sales
> force and certain customers of their respective brokerage firms. Each of these
> reports was publicly available and entered the public marketplace.

39. As a result of the foregoing, the market for Majesco's securities promptly digested
current information regarding Majesco from all publicly available sources and reflected such
information in Majesco's stock price. Under these circumstances, all purchasers of Majesco's
securities during the Class Period suffered similar injury through their purchase of Majesco's
securities at artificially inflated prices and a presumption of reliance applies.

## LOSS CAUSATION

40.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the damages suffered by plaintiff and the Class.

41.     During the Class Period, plaintiff and the Class purchased securities of the Company at artificially inflated prices and were damaged thereby. The price of the Company's common stock declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## ADDITIONAL SCIENTER ALLEGATIONS

42.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Majesco, their control over and/or receipt and/or modification of Majesco's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Majesco, participated in the fraudulent scheme alleged herein.

43.     In addition, defendants were motivated to commit the wrongdoing alleged herein so that the Company's secondary offering would be priced higher than it would have been had investors known the truth about Majesco's business (*i.e.*, that the seemingly impressive 2004 and

early 2005 results were not sustainable and did not reflect present demand or foreseeable future demand for the Company's products or its future earnings potential).

## NO SAFE HARBOR

44.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Majesco who knew that those statements were false when made.

## FIRST CLAIM

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

45.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.     During the Class Period, Majesco and the Individual Defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout

the Class Period, did: (a) deceive the investing public, including plaintiff and other Class members, as alleged herein; (b) artificially inflate and maintain the market price of Majesco's securities; and (c) cause plaintiff and other members of the Class to purchase Majesco's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

47.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Majesco's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

48.     In addition to the duties of full disclosure imposed on defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. § 210.01 *et seq.*) and Regulation S-K (17 C.F.R. § 229.10 *et seq.*) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and earnings so that the market price of the Company's securities would be based on truthful, complete and accurate information.

49.     Majesco and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Majesco as specified herein.

50.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Majesco's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Majesco and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Majesco's securities during the Class Period.

51.     The Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (a) the Individual Defendants were high-level executives and directors at the Company during the Class Period; (b) the Individual Defendants were privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; and (c) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

52.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Majesco's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

53.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Majesco's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Majesco's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Majesco securities during the Class Period at artificially high prices and were damaged thereby.

54.     At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the

other members of the Class and the marketplace known of the true financial condition and

business prospects of Majesco, which were not disclosed by defendants, plaintiff and other

members of the Class would not have purchased or otherwise acquired their Majesco securities,

or, if they had acquired such securities during the Class Period, they would not have done so at

the artificially inflated prices which they paid.

55.     By virtue of the foregoing, defendants have violated Section 10(b) of the

Exchange Act, and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the

other members of the Class suffered damages in connection with their respective purchases and

sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

57.     Plaintiff repeats and realleges each and every allegation contained above as if fully

set forth herein.

58.     The Individual Defendants acted as a controlling person of Majesco within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level

positions, and their ownership and contractual rights, participation in and/or awareness of the

Company's operations and/or intimate knowledge of the statements filed by the Company with

the SEC and disseminated to the investing public, the Individual Defendants had the power to

influence and control and did influence and control, directly or indirectly, the decision-making of

the Company, including the content and dissemination of the various statements which plaintiff

contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.    In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

60.    As set forth above, Majesco and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions each as a controlling person, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Majesco's and the Individual Defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating plaintiff as lead plaintiff and certifying plaintiff as class representatives under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as lead counsel;

B.   Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.   Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.   Such other and further relief as the Court may deem just and proper.

DATED:      July 15, 2005              **SHALOV STONE & BONNER LLP**


By: _____
      Patrick L. Rocco (PR 8621)
      163 Madison Avenue, P.O. Box 1277
      Morristown, New Jersey 07962
      (973) 775-8997

**MILBERG WEISS BERSHAD &**
**SCHULMAN LLP**
Steven G. Schulman
Peter E. Seidman
Andrei V. Rado
One Pennsylvania Plaza
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

--and--

Maya Saxena
Joseph E. White III
5200 Town Center Circle, Suite 600
Boca Raton, FL 33486
Tel: (561) 361-5000
Fax: (561) 367-8400

**Attorneys for Plaintiff**

- 23 -

## CERTIFICATION OF PROPOSED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, Barry McAnarney, on behalf of the CENTRAL LABORERS' PENSION FUND declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1. I have reviewed the Majesco Entertainment Company (NASDAQ:COOL) complaint prepared by Milberg Weiss Bershad & Schulman LLP, whom I designate as counsel for CENTRAL LABORERS' PENSION FUND in this action for all purposes.

2. As Executive Director of the CENTRAL LABORERS' PENSION FUND, I have been duly authorized by CENTRAL LABORERS' PENSION FUND to commence litigation against Majesco Entertainment Company and the other defendants.

3. CENTRAL LABORERS' PENSION FUND did not acquire Majesco Entertainment Company securities at the direction of plaintiff's counsel or in order to participate in any private action under the federal securities laws.

4. CENTRAL LABORERS' PENSION FUND is willing to serve as a named or lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

5. CENTRAL LABORERS' PENSION FUND will not accept any payment for serving as a representative party beyond its pro rata share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the court pursuant to law.

6. CENTRAL LABORERS' PENSION FUND has not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except: See attached Schedule B.

7. CENTRAL LABORERS' PENSION FUND understands that this is not a claim form, and that its ability to share in any recovery as a member of the class is unaffected by its decision to serve as a representative party.

8. Since December 8, 2004, the CENTRAL LABORERS' PENSION FUND has made the following transactions in Majesco Entertainment Company (NASDAQ: COOL) and will provide records of those transactions upon request:

| No. of Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| | See attached Schedule A | | |

I declare under penalty of perjury that the foregoing is true and correct

Executed this 13 day of ___July___, 2005

CENTRAL LABORERS' PENSION FUND

By: _____

Barry McAnarney, Executive Director

Schedule A
Central Laborers' Pension Fund
Transactions in Majesco Entertainment Company (NASDAQ: COOL)

|  | DATE | SHARES | COST |
|---|------|--------|------|
| **Purchase(s):** | | | |
| | 03/16/05 | 2,970 | 13.0398 |
| | 03/16/05 | 430 | 12.8050 |
| | 03/17/05 | 2,410 | 13.0292 |
| | 03/17/05 | 450 | 13.1000 |
| | 03/18/05 | 300 | 12.8900 |
| | 03/18/05 | 3,490 | 12.9651 |
| | 03/21/05 | 1,470 | 12.5113 |
| | 03/21/05 | 3,600 | 12.5387 |
| | 03/22/05 | 760 | 12.5500 |
| | 03/22/05 | 1,410 | 12.5430 |
| | 03/28/05 | 4,080 | 11.2922 |
| | 04/06/05 | 1,050 | 11.3620 |
| | 04/07/05 | 740 | 10.9940 |
| | 05/05/05 | 6,300 | 8.0913 |
| | 05/06/05 | 1,270 | 8.0896 |
| **Sale(s):** | | | |
| | 07/01/05 | 340 | 7.2650 |
| | 07/08/05 | 230 | 6.7500 |
| | 07/08/05 | 70 | 6.7600 |

(1) All dates are settlement dates.

2

**Schedule B**
**Central Laborers' Pension Fund**

Central Laborers' Pension Fund et al. v. Merix Corporation et al., D. Or. 3:04cv826

In re Adolor Corporation Securities Litigation, E.D. Pa. 2:04cv01728

In re Electro Scientific Industries, Inc. Securities Litigation, D. Or. 3:03cv00404

In re FirstEnergy Corporation Securities Litigation, N.D. Ohio 05:03cv1684

In re InterCept Securities Litigation, N.D. GA 1:03-cv-03475

In re Sara Lee Corporation Securities Litigation, N.D. Ill. 1:03cv3202

In re Stellent, Inc. Securities Litigation, D. Minn. 0:03cv4384

Whalen, et al. v. Hibernia Foods, PLC., et al., S.D.N.Y.  04-CV-3182

In re Wireless Facilities, Inc. Securities Litigation, S.D.CA. 04-cv-1589

Hiatt v. Sirva Inc, et al., N.D.Ill. 04-cv-7532

Orem v. Integrated Elec. Servs., S.D. TX. 04-cv-3342

In re Infineon Techs. AG Sec. Litig., N.D. CA. 04-cv-4156

Central Laborers' Pension Fund v. Dobson Communications, W.D.OK. 04-cv-1394