Lisa J. Rodriguez
TRUJILLO RODRIGUEZ & RICHARDS,
LLC
8 Kings Highway West
Haddonfield, NJ 08033
Tel: (856) 795-9002
Fax: (856) 795-9887

     -and-

Robert N. Kaplan
Donald R. Hall
Jeffrey P. Campisi
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714

*Attorneys for Lead Plaintiff Diker
Management, LLC, Diker Micro and
Small Cap Fund LP, Diker M&S Cap
Master LTD, Diker Micro-Value Fund LP
and Diker Micro Value QP Fund LP*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re Majesco Securities Litigation | CASE NO. 2:05-cv-03557-PGS-ES |

## MEMORANDUM IN SUPPORT OF MOTION FOR
## PRELIMINARY APPROVAL OF SETTLEMENT

# TABLE OF CONTENTS

**CASES**

TABLE OF AUTHORITIES ................................................................................. ii

I.      PRELIMINARY STATEMENT .................................................................. 1

II.     FACTUAL BACKGROUND OF THIS LITIGATION ..................................... 2

III.    THE SETTLEMENT ............................................................................... 4

IV.     SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO
        GRANT PRELIMINARY APPROVAL ......................................................... 4

        A. The Role of the Court in the Approval of a Class Action Settlement ........... 4

        B. Factors to Be Considered in Granting Preliminary Approval ..................... 6

V.      CERTIFICATION OF THE CLASS UNDER FEDERAL RULE OF CIVIL
        PROCEDURE 23 IS APPROPRIATE ......................................................... 8

        A. The Class Is Sufficiently Numerous .................................................... 9

        B. Common Questions of Law or Fact Exist .............................................. 10

        C. Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class ......... 11

        D. Lead Plaintiffs Are More Than Adequate Representatives ........................ 12

        E. The Requirements of Rule 23(b)(3) Are Also Satisfied ............................ 13

            1. Common Legal and Factual Questions ............................................. 13

            2. A Class Action Is the Superior Means to Adjudicate Lead Plaintiffs' Claims ..... 13

VI.     PROPOSED SCHEDULE OF EVENTS ....................................................... 14

VI.     CONCLUSION ..................................................................................... 15

## TABLE OF AUTHORITES

**CASES**

*Amchem Prods. v. Windsor,*
   521 U.S. 591 (1997)............................................................................................ 15, 16, 17

*Armstrong v. Bd. Of Sch. Dirs.,*
   616 F.2d 305 (7th Cir. 1980)........................................................................................ 6, 9

*Austin v. Pa. Dep't of Corr.,*
   876 F. Supp. 1437 (E.D. Pa. 1995) ................................................................................. 7

*Baby Neal for & by Kanter v. Casey,*
   43 F.3d 48 (3d Cir. 1994) ......................................................................................... 12, 13

*Eisenberg v. Gagnon,*
   766 F.2d 770 (3d Cir. 1985) ...................................................................................... 11, 17

*Epstein v. Moore,*
   No. 87-2984 (AET), 1988 U.S. Dist. LEXIS 5450 (D.N.J. June 13, 1988) ............................ 14

*Girsh v. Jepson,*
   521 F.2d 153 (3d Cir. 1975) ......................................................................................... 8

*In re AremisSoft Corp. Sec. Litig.,*
   210 F.R.D. 109 (D.N.J. 2002)................................................................................... 14, 16

*In re Centocor, Inc. Sec. Litig. III,*
   No. 98-260, 1999 U.S. Dist. LEXIS 1224
    (E.D. Pa. Jan. 27, 1999) ........................................................................................... 11

*In re Cephalon Sec. Litig.,*
   No. 96-0633, 1998 U.S. Dist. LEXIS 12321 (E.D. Pa. Aug. 12, 1998) ................................... 13

*In re Electro-Catheter Sec. Litig.,*
   No. 87-41, 1987 U.S. Dist. LEXIS 13500 (D.N.J. Dec. 4, 1987)............................................ 14

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
   55 F.3d 768 (3d Cir. 1995) ......................................................................................... 15

*In re Pharmaprint, Inc. Sec. Litig.,*
   No. 00-cv-00061, 2002 U.S. Dist. LEXIS 19845, (D.N.J. Apr. 17, 2002).............................. 16

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions,*
   148 F.3d 283 (3d Cir. 1998) ............................................................................... 5, 14, 16

*In re Res. Am. Sec. Litig.,*
   202 F.R.D. 177 (E.D. Pa. 2001)................................................................................... 11

*In re Warfarin Sodium Antitrust Litig.,*
   212 F.R.D. 231 (D. Del. 2002), *aff'd,* 391 F.3d 516 (3d Cir. 2004)........................................ 14

*Kline v. First W. Gov't Sec.,*
   No. 83-1076, 1995 U.S. Dist. LEXIS 19223 (E.D. Pa. Dec. 21, 1995)................................... 12

*Lake v. First Nationwide Bank*,
  900 F. Supp. 726 (E.D. Pa. 1995) ............................................................................. 7

*Moskowitz v. Lopp*,
  128 F.R.D. 624 (E.D. Pa. 1989) ............................................................................. 12

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ................................................................................... 8

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
  390 U.S. 414 (1968) .................................................................................................. 7

*Rendler v. Gambone Bros. Dev. Co.*,
  182 F.R.D. 152 (E.D. Pa. 1998) ............................................................................. 15

*Seidman v. Am. Mobile Sys.*,
  157 F.R.D. 354 (E.D. Pa. 1994) ............................................................................. 12

*Weikel v. Tower Semiconductor, Ltd.*,
  183 F.R.D. 377 (D.N.J. 1998) ................................................................................ 11

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ....................................................................................... 7

*Zinberg v. Wash. Bancorp, Inc.*,
  138 F.R.D. 397 (D.N.J. 1990) ................................................................................ 11

## STATUTES, RULES AND OTHER AUTHORITIES

1 Alba Conte & Herbert B. Newberg,
  *Newberg on Class Actions* §3.10, at 271 (4th ed. 2002) ....................................... 10

Federal Rules of Civil Procedure
  Rule 9(b) .................................................................................................................... 4
  Rule 12(b)(6) .............................................................................................................. 4
  Rule 23 ............................................................................................................... passim
  Rule 23(a) ...................................................................................................... 8, 10, 13
  Rule 23(b) .................................................................................................... 8, 9, 13, 14
  Rule 23(e) ............................................................................................................... 4, 8

James Wm. Moore, *Moore's Federal Practice* §23.83[1] (3d ed. 2002) ...................... 5

*Manual for Complex Litigation*
  §30.41 (3d ed. 1995) .............................................................................................. 5, 6

Private Securities Litigation Reform Act of 1995 ..................................................... 3, 4

Securities Act of 1933
  Section 11 ................................................................................................................... 3
  Section 12 ................................................................................................................... 3
  Section 15 ................................................................................................................... 3

Securities Exchange Act of 1934
  Sections 10(b) ............................................................................................................ 3

Section 20(a) ................................................................................................................................... 3

Rule 10b-5 .............................................................................................................................. 3, 12

Lead Plaintiff Diker Management, LLC, Diker Micro and Small Cap Fund LP, Diker M&S Cap Master LTD, Diker Micro-Value Fund LP, and Diker Micro Value QP Fund LP ("Diker" or "Lead Plaintiffs"), and the other members of the Settlement Class move for an order pursuant to Federal Rule of Civil Procedure 23(e) giving preliminary approval to a settlement with the defendants in the amount of $8,099,000 consisting of $5,624,000 in cash plus interest and $2,475,000 of the common stock of Majesco Entertainment Company ("Majesco"). If finally approved by this Court, the Settlement will conclude this case and represent an excellent result for the Settlement Class.

## I. PRELIMINARY STATEMENT

The proposed Settlement now before the Court will enable the Settlement Class to recover $8,099,000 consisting of $5,624,000 in cash plus interest and $2,475,000 in Majesco common stock in exchange for the dismissal of all claims against all defendants: Majesco, Carl Yankowski, Jan E. Chason, Jesse Sutton, Joseph Sutton, Morris Sutton, Laurence Aronson, F. Peter Cuneo, James Halpin, Louis Lipschitz, and Marc Weisman, RBC Capital Markets Corporation, JMP Securities LLC, Harris Nesbitt Corp. (now known as BMO Capital Markets), Wedbush Morgan Securities Inc. and Goldstein Golub Kessler LLP ("GGK"). The Settlement is contained in i) a Stipulation of Settlement among Lead Plaintiffs and all defendants except GGK dated September 27, 2007 and ii) a Stipulation of Settlement among Lead Plaintiffs and GGK dated March 14, 2008, which are attached as Exhibits A and B to the Declaration of Donald R. Hall dated March 25, 2008 (the "Hall Declaration") submitted herewith.

By this motion, Lead Plaintiffs request that the Court enter an order preliminarily approving the settlement which will: (1) grant preliminary approval to the proposed settlement; (2) approve the form and manner of giving notice to the Settlement Class; and (3) set a hearing

for final approval of the settlement and set a schedule for other deadlines. A proposed order is attached as Exhibit C to the Hall Declaration.

Lead Plaintiffs request that this motion be granted not only because public policy favors the settlement of complex class actions such as this one, but, as demonstrated herein, this settlement has achieved excellent results for the Settlement Class. The proposed settlement is fair, reasonable and adequate under the governing standards in this Circuit and warrants the approval of this Court.

Lead Plaintiffs request that the Court set a date for a final approval hearing on or about 210 days from the date that the Court enters an Order preliminarily approving the settlement. As noted above, a significant portion of the settlement consideration is in the form of Majesco common stock. Under the terms of the Stipulation of Settlement dated September 27, 2007 (Ex. A to the Hall Declaration, Section II), the stock consideration has a guaranteed value of $2,475,000 through the date of the final approval hearing. As such, Lead Plaintiffs believe that 210 days provides sufficient time to process claims of the Settlement Class members so that the stock portion of the settlement may be distributed to Settlement Class members as soon as practicable after the judgment in this action is final.

## II.    **FACTUAL BACKGROUND OF THIS LITIGATION**

The following complaints were commenced in the United States District Court for the District of New Jersey, on or after July 15, 2005: (1) *Central Laborers' Pension Fund v. Majesco Entertainment Company, et al.* 05cv3557 (FSH); (2) *Bruce Simons  v. Majesco Entertainment Company, et al.* 05cv3646 (FSH); (3) *Roman Tivyan v. Majesco Entertainment Company, et al.* 05-3724 (FSH); and (4) *Denver Employees Retirement Plan v. Majesco Entertainment Company, et al.* 05-4518 (FSH). On September 16, 2005, Diker and other Majesco investors moved

pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") to: 1) consolidate the cases; 2) appoint Lead Plaintiffs; and 3) appoint lead counsel. On October 12, 2005, these actions were consolidated for all purposes under the caption *In re Majesco Securities Litigation,* No. 05cv3557, and the Court appointed Diker Management, LLC, Diker Micro and Small Cap Fund LP, Diker M&S Cap Master LTD, Diker Micro-Value Fund LP and Diker Micro Value QP Fund LP as Lead Plaintiffs, Kaplan Fox & Kilsheimer LLP as Lead Counsel and Trujillo Rodriguez & Richards as liaison counsel.

On December 14, 2005, Plaintiffs filed an Amended Consolidated Class Action Complaint (the "Complaint") alleging violations of Sections 11, 12 and 15 of the Securities Act of 1933 ("Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder.  The Complaint alleges that Majesco's financial statements for the fiscal year-ended October 31, 2004 and the fiscal quarters-ended January 31, 2005 and April 30, 2005 were materially false and misleading in violation of both the Securities Act and Exchange Act, including numerous violations of Generally Accepted Accounting Principles ("GAAP").  The Complaint further alleges that Defendants: 1) failed to disclose material technical problems with the development of a new video game, *Advent Rising*; and 2) misled investors regarding Majesco's ability to transform itself from a developer and distributor of "value" video games, which are typically sold at retail prices below $20 and typically involve comparatively lower development and marketing costs, to a developer and distributor of "frontline" titles, which are premium priced video games and involve much higher development and marketing costs.  Defendants allegedly made these statements to investors through the Company's press release, conference calls and required SEC filings. The Complaint sets forth further details of Defendants' alleged wrongdoing.

3

On February 3, 2006, each Defendant moved pursuant to Rules 9(b) and/or 12(b)(6) of the Federal Rules of Civil Procedure and the PSLRA to dismiss the Complaint. On September 29, 2006, the Court issued an Opinion and Order that denied each Defendant's motion to dismiss. On November 29, 2006, Defendants answered the Complaint. In addition, each Defendant asserted certain defenses to the claims alleged in the Complaint.

### III.   THE SETTLEMENT

The settlement was reached through arms-length negotiations between Lead Counsel and counsel for Defendants. Beginning in December 2006, the Parties engaged in a mediation with an experienced mediator concerning the possibility of settlement. During the mediation, the strengths/weaknesses of the claims were discussed and debated. Negotiations between the Parties concerning the terms of the Settlement continued until September 27, 2007, at which time a Stipulation of Settlement with the Defendants, except for GGK, was executed. After certain discovery against GGK and further mediation, Lead Plaintiffs and GGK executed a Stipulation of Settlement on March 14, 2008.

### IV.   SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is a matter within the discretion of the district court. *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions,* 148 F.3d 283, 317 (3d Cir. 1998).

#### A.   The Role of the Court in the Approval of a Class Action Settlement

The procedure for review of a proposed class action settlement is well established:

District court review of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Manual for Complex Litigation* §1.46, at 53-55 (West 1977). If the district court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard. The goal of the fairness hearing is

> to adduce all information necessary to enable the judge intelligently to rule on whether the proposed settlement is "fair, reasonable, and adequate."

*Manual for Complex Litigation* at 57. On the basis of all information available to him, the trial judge must decide whether or not to approve the proposed settlement.

*Armstrong v. Bd. Of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds*

(footnotes omitted).

At this juncture, the parties request only that the Court grant preliminary approval of the Stipulation so that notice may be sent to the Class. The Court will have before it more extensive pleadings submitted in support of the proposed Settlement at the final approval hearing and will then be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate and should be finally approved. The determination of whether the proposed Settlement is fair, reasonable, and adequate is made only after notice of the Settlement has been given to the members of the Settlement Class and after they have been given an opportunity to voice their views of the Settlement. *See* James Wm. Moore, *Moore's Federal Practice* §23.83[1], at 23-336.2 to 23-339 (3d ed. 2002).

### B.   Factors to Be Considered in Granting Preliminary Approval

A number of factors should be considered in evaluating a settlement for purposes of preliminary approval.  No one factor should be determinative, but rather all factors should be examined.  These criteria have been summarized as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation* §30.41, at 237 (3d ed. 1995).  Here, the Settlement meets all of these criteria.  Moreover, preliminary examination of the criteria for final approval supports this conclusion.

This Settlement is the result of arm's-length negotiations by experienced counsel.  This Settlement was reached only after Plaintiffs' Lead Counsel diligently prosecuted the claims of the Settlement Class.  Based upon Lead Counsel's familiarity with the factual and legal issues of this Litigation, Lead Counsel was ultimately able to negotiate a very good result for the Settlement Class, taking into account the costs and risks of continued litigation.

Courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight.  *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995); *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995).  Here, Lead Counsel has extensive experience in securities litigation, and believes that this Settlement is fair, reasonable, and adequate in light of the circumstances of this litigation.

The question of whether a proposed settlement is fair, reasonable, and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "'the terms of the compromise with the likely rewards of litigation.'" *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424-25 (1968)).  An evaluation of the costs and benefits of settlement must also be tempered by a recognition that any compromise involves concessions on the part of all of the settling parties.  Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Here, $8,099,000 has been obtained for the Settlement Class in the face of a determined defense that, if successful, may have precluded any recovery at all.

The risk of establishing liability is another factor the courts consider in determining the fairness of a settlement.  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  Defendants vehemently denied any and all liability, alleging that they did not act with the required state of mind.  Lead Plaintiffs faced numerous obstacles in proving Defendants were liable.  There was no certainty, given Defendants' vigorously asserted defenses, that Lead Plaintiffs would prevail on either liability or damages at the level asserted.  The proposed Settlement eliminates these and many other risks of continued litigation.

"'[T]he stage of the proceedings and the amount of discovery completed'" is another factor which courts consider in determining the fairness of a settlement.  *Girsh*, 521 F.2d at 157 (citation omitted).  Here, Lead Counsel conducted a thorough investigation of the facts and circumstances prior to the execution of the Stipulation.  Lead Counsel interviewed numerous former Majesco employees and third parties, and reviewed and analyzed Majesco's public

7

documents including its filings with the United States Securities and Exchange Commission. Lead Counsel retained and consulted extensively with accounting and damages experts to fully and thoroughly evaluate these issues.  Lead Plaintiffs briefed motions to dismiss by Defendants, and moved for class certification.  In short, there can be no question that at the time the Settlement was reached, Lead Counsel had a clear view of the strengths and weaknesses of the Settlement Class's claims.

There can also be no question that the Settlement proposed is the product of serious, informed, non-collusive negotiations, and well within the range of possible approval and does not have any obvious deficiencies.  Thus, preliminary consideration of some of the factors considered by courts in the Third Circuit in granting final approval of class action settlements lends support to the parties' belief that this Settlement is well "within the range of possible approval." *Armstrong*, 616 F.2d at 310.

Lead Counsel firmly believe the Settlement merits final approval.  However, at this time the Court is only being asked to permit notice of the terms of the Settlement to be sent to the Class and schedule a hearing, pursuant to Federal Rule of Civil Procedure 23(e), to consider any views expressed by Settlement Class members on the fairness of the Settlement set forth in the Stipulations.  Moore, *supra*, §23.83[1], at 23-336.2 to 23.339.

## V.    CERTIFICATION OF THE CLASS UNDER FEDERAL RULE OF CIVIL PROCEDURE 23 IS APPROPRIATE

In order to go forward with the settlement approval process, it is necessary that the Court certify a class for purposes of the Settlement.  Federal Rule of Civil Procedure 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and, in addition, the action qualifies under one of the subdivisions of Rule 23(b).  Rule 23(a) provides that:

8

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b) provides, in relevant part:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As set forth below, all the requirements of Rule 23 are easily met and certification of the

Settlement Class is clearly appropriate here.

## A. The Class Is Sufficiently Numerous

Plaintiffs need not prove the exact size of the proposed class, but rather must demonstrate

only that the number is sufficiently large, making joinder impracticable. "'Impracticability does

not mean impossibility, but rather that the difficulty or inconvenience of joining all members of

the class calls for class certification.'" *Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377,

388 (D.N.J. 1998) (citation omitted). "There are no specific standards regarding class size and it is not necessary for a plaintiff to allege the exact number of class members to satisfy the numerosity requirement." *In re Centocor, Inc. Sec. Litig. III*, No. 98-260, 1999 U.S. Dist. LEXIS 1224, at **4-5 (E.D. Pa. Jan. 27, 1999); *Zinberg v. Wash. Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990). During the Class Period, there were millions of shares of Majesco common stock outstanding and traded by hundreds of Settlement Class members. The threshold for a presumption of impracticability of joinder is thus easily exceeded.

### B.    Common Questions of Law or Fact Exist

Rule 23(a)(2) requires that the complaint raise questions of law or fact which are common to the class. *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985); *In re Res. Am. Sec. Litig.*, 202 F.R.D. 177, 181 (E.D. Pa. 2001); 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §3.10, at 271 (4th ed. 2002). "Allegations of a common course of fraudulent conduct generally satisfy the commonality requirement." *Seidman v. Am. Mobile Sys.*, 157 F.R.D. 354, 360 (E.D. Pa. 1994). Indeed, the commonality requirement is satisfied where the named plaintiffs share only one common question of law or fact. *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Allegations that a company "and its management omitted material information from its public disclosures thereby inflating the price of . . . stock is the paradigmatic common question of law or fact in a securities fraud class action." *Moskowitz v. Lopp*, 128 F.R.D. 624, 629 (E.D. Pa. 1989). *See Kline v. First W. Gov't Sec.*, No. 83-1076, 1995 U.S. Dist. LEXIS 19223, at **12-13 (E.D. Pa. Dec. 21, 1995) ("Whether fraudulent misrepresentations and/or material omissions were contained in . . . opinion letters and . . . materials – are issues common to all class members. Indeed, these are the paradigmatic issues in securities fraud class action cases.").

10

Like the cases cited above, this case presents numerous common questions of law ***and*** fact, including:

- Whether the federal securities laws were violated by Defendants' acts alleged in the Complaint;

- Whether Defendants omitted and/or misrepresented material facts;

- Whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- Whether Defendants acted with the requisite state of mind;

- Whether the price of Majesco common stock was artificially inflated; and

- Whether the Settlement Class members sustained damages, and if so, the proper measure of such damages.

These issues of law and fact are common to all members of the Settlement Class, such that this action satisfies the commonality requirement.

### C.    Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class

"Typicality asks whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Baby Neal*, 43 F.3d at 55.  A finding of typicality will generally not be precluded even if there are "pronounced factual differences . . . where there is a strong similarity of legal theories." *In re Cephalon Sec. Litig.*, No. 96-0633, 1998 U.S. Dist. LEXIS 12321, at *7 (E.D. Pa. Aug. 12, 1998) (citing *Baby Neal*, 43 F.3d at 58); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 250 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004); *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1988).  "In addition, it must be remembered that the focus is on defendant's behavior, not that of plaintiff, and on whether the class can point to the same general, over-all course of fraudulent conduct." *Epstein v. Moore*,

11

No. 87-2984 (AET), 1988 U.S. Dist. LEXIS 5450, at *6 (D.N.J. June 13, 1988); *In re Electro-Catheter Sec. Litig.*, No. 87-41, 1987 U.S. Dist. LEXIS 13500, at *8 (D.N.J. Dec. 4, 1987).

Typicality is clearly satisfied here since Lead Plaintiffs' claims arise from the same course of conduct that gave rise to the claims of all other Settlement Class members and are based on the same legal theory. Lead Plaintiffs, like all Settlement Class members, purchased Majesco stock during the Class Period unaware that Defendants had made materially false and misleading statements that had artificially inflated the price of that stock, and were damaged thereby. All Settlement Class members were damaged in exactly the same manner, such that the typicality requirement is met. *See In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 121 (D.N.J. 2002) (typicality satisfied in 10b-5 actions, alleging defendants' misstatements artificially inflated company's stock).

### D.   Lead Plaintiffs Are More Than Adequate Representatives of the Settlement Class

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). The factors relevant to a determination of adequacy are: (i) the absence of potential conflict between the named plaintiff and the class members; and (ii) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation. *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800-01 (3d Cir. 1995); *Rendler v. Gambone Bros. Dev. Co.*, 182 F.R.D. 152, 159 (E.D. Pa. 1998).

Here, there are no conflicts between the Lead Plaintiffs and absent members of the Settlement Class. Lead Plaintiffs have demonstrated their adequacy through their vigorous prosecution of this case to date and through retaining experienced counsel to litigate the case. Lead Counsel is one of the preeminent class action firms in the country, having served as

12

plaintiffs' counsel in this and numerous other securities actions.  Lead Counsel has a proven

track record in the prosecution of class actions and has successfully litigated and tried major

class securities action cases.  Moreover, Liaison Counsel has significant experience in class

action litigation.

## E.      The Requirements of Rule 23(b)(3) Are Also Satisfied

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule

23(a), common questions of law or fact predominate over any individual questions and a class

action is superior to other available means of adjudication.  *Amchem*, 521 U.S. at 592-93.  This

litigation easily meets Rule 23(b)(3)'s requirements.

### 1.      Common Legal and Factual Questions
####         Predominate in this Action

The predominance test is readily met in securities fraud actions.  *Prudential Ins.*, 148

F.3d at 314.  *See, e.g., In re Pharmaprint, Inc. Sec. Litig.*, No. 00-cv-00061, 2002 U.S. Dist.

LEXIS 19845, at *19 (D.N.J. Apr. 17, 2002) ("Common issues are predominant in this litigation

based on Lead Plaintiffs' allegation that Defendants made material misrepresentations to the

general investing public."); *AremisSoft*, 210 F.R.D. at 122 ("Although individual damage claims

will differ depending on when and what type of stock was acquired, these issues cast no doubt on

the finding of predominance."); *Eisenberg*, 766 F.2d at 786.  Here, as discussed above, the

claims asserted raise numerous questions of fact and law common to all Settlement Class

members.  As such, common issues predominate.

### 2.      A Class Action Is the Superior Means to Adjudicate
####         Lead Plaintiffs' Claims

The second prong of Rule 23(b)(3) is essentially satisfied by the Settlement itself.  As

explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a

district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." 521 U.S. at 620. Thus, any manageability problems that may have existed here are eliminated by the Settlement.

Based on the above, certification of the Settlement Class is appropriate.

## VI.   PROPOSED SCHEDULE OF EVENTS

Lead Plaintiffs proposes the following schedule of events leading to the final approval hearing:

| | |
|---|---|
| Notice mailed to the Class | 15 days after the Preliminary Approval Order is signed (the "Notice Date") |
| Summary Notice published | 15 days from the Notice Date |
| Last day for Class Members to opt-out or object to the settlement | 45 days from the Notice Date |
| Date by which to file papers in support of the Settlement, Plan of Allocation and request for attorneys' fees and reimbursement of expenses | 21 days prior to final approval hearing date |
| Last day for Class Members to file Proof of Claim forms | 120 days from the Notice Date |
| Final approval hearing | 210 days from the Notice Date |

## VII.  CONCLUSION

For these reasons, Lead Plaintiffs respectfully request that the Court grant this Motion for Preliminary Approval of Settlement and enter the Order attached hereto as Exhibit C.

Dated: March 25, 2008

Respectfully submitted,

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**

By:    s/Lisa J. Rodriguez

Lisa J. Rodriguez
8 Kings Highway West
Haddonfield, New Jersey 08033
Telephone:     (856) 795-9002
Facsimile:     (856) 795-9887
*Liaison Counsel for Lead Plaintiffs*

-and-

Robert N. Kaplan (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
Jeffrey P. Campisi (admitted *pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Tel:    (212) 687-1980
Fax:    (212) 687-7714

*Lead Counsel for Lead Plaintiffs Diker Management, LLC, Diker Micro and Small Cap Fund LP, Diker M&S Cap Master LTD, Diker Micro-Value Fund LP, and Diker Micro Value QP Fund LP and the Class*

15